.CONSOLIDATED WATER POWER & PAPER CO. v. BOWLES, Price Adm'r.

No. 126.

United States Emergency Court of Appeals.

Heard at Washington Sept. 24, 1945.

Decided Dec. 10, 1945.

J. Verser Conner, of Louisville, Ky. (Hubachek & Kelly, of Chicago, Ill., Renah F. Camalier, of Washington, D. C., and Charles Scott Kelly, and John D. Hastings, both of Chicago, Ill., on the brief), for complainant.

Jacob D. Hyman, Asst. Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Joseph Brenner, Attorney, all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

LAWS, Judge.

This case is before the Court on a Supplemental Complaint filed by a manufacturer of book paper, alleging that the Administrator has failed to comply with our judgment rendered in complainant's favor on December 6, 1944.[1]

Maximum prices were first established for book paper by the General Maximum Price Regulation, issued April 28, 1942, which established as the ceiling price for each brand of book paper the maximum price charged for such paper during March, 1942. On August 19, 1943, the Administrator issued Maximum Price Regulation No. 451 providing dollars-and-cents

---

[1] 146 F.2d 492.

maximum prices for fourteen specified grades of book paper. The Regulation included an "Appendix A" in which were listed by their names 277 brands of book paper. The name of each of these brands and the name of its manufacturer were set forth in Appendix A under a specified grade as examples of the brands which were "to be considered to be that grade." A uniform maximum price was established for all the brands within each grade. The general level of maximum prices established by the Regulation was substantially the level prevailing in the period October 1–15, 1941, the same level persisting in March, 1942. In setting the uniform prices under Maximum Price Regulation No. 451, the individual ceilings of a few manufacturers under the General Maximum Price Regulation were slightly raised while the individual ceilings of a few others were slightly lowered.

A freeze method of price control was applied by Maximum Price Regulation No. 451 to unlisted book papers and provision was made for the listing of a brand not listed in Appendix A as an example of a specified grade if it previously had been sold and distributed by the manufacturer and recognized and accepted in the trade as that grade.

In the original proceeding before us, complainant, to whose products the freeze method was applied, objected to the provisions of Maximum Price Regulation No. 451. We found that book papers were grouped in the Regulation according to their quality and that complainant's products, though recognized by the trade as being equal in quality to certain listed grades, were unfairly discriminated against because they were "deprived of their customary association in the trade with the listed brands [and] * * * were relegated to a type of control which provided no listing by name or grade and no dollars-and-cents ceiling." Accordingly judgment was entered by the Court setting aside Maximum Price Regulation No. 451 "insofar as it denies the same grade classification and form of price control to products recognized in the book paper trade as being of equal quality."

On May 3, 1945, complainant moved for leave to file a Supplemental Complaint. It pointed out that subsequent to the judg-ment of the Court, on January 5, 1945, the Administrator issued Amendment 5 to Maximum Price Regulation No. 451, superseding the original Regulation and providing that the maximum prices for book paper should be the maximum lawful prices charged during the last quarter of 1944. Complainant asserted that in order to ascertain the maximum lawful price charged during that period, it was necessary to refer to Appendix A of Maximum Price Regulation No. 451, which the Court had found discriminatory and, accordingly, complainant argued that the Amendment did not comply with the judgment of the Court. The Administrator made no objection to the filing of the Supplemental Complaint and it was permitted to be filed. Certain evidence was stipulated into the record. Complainant then filed a motion for leave to take depositions and for discovery. This motion was denied.[2] On July 17, 1945, the Administrator moved to amend the answer to the Supplemental Complaint, alleging that on July 14, 1945, Amendment 5 had been superseded by the issuance of Revised Maximum Price Regulation No. 451. Complainant thereafter moved to amend the Supplemental Complaint so as to reassert with respect to Revised Maximum Price Regulation No. 451 the objections it had stated with respect to Amendment 5. These motions were granted.

We are now concerned only with Revised Maximum Price Regulation No. 451, by which the Administrator, following our decision, eliminated certain objectionable features of Maximum Price Regulation No. 451. In the Revised Regulation he listed alphabetically the names of the companies manufacturing book paper and under each company the names of the brands which it manufactured and sold. Dollars-and-cents prices were specified for each brand of paper, the price in each case being the price established under Maximum Price Regulation No. 451. The Administrator omitted from the Revised Regulation all specific mention of classification by grade or quality. He published in the Revised Regulation the names of complainant's products and gave them dollars-and-cents ceiling prices precisely as he previously had done and continued to do in respect of competing papers. This he contends was full compliance with our judg-

---

[2] Em.App., 150 F.2d 960.

ment. Complainant maintains, however, that a discriminatory classification by quality persists in the Revised Regulation by the continuation of the prices which were set by Maximum Price Regulation No. 451.

A question of procedure has been suggested in this case. The Administrator maintains that the jurisdiction of this Court on a supplemental complaint is limited to a determination of whether the Revised Regulation is inconsistent on its face with the judgment in the original case, and that if other issues are presented, recourse must first be had to protest proceedings in accordance with the provisions of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. Complainant has taken the position that this Court, in determining whether or not its judgment and mandate have been obeyed, is not so limited. In the manner in which this case has developed, this question of procedure need not be decided. It is apparent, as we shall later point out, that the supplemental proceedings brought by complainant raise only issues which were involved in the original case. In effect they simply call for a clarification of the opinion and judgment previously rendered. In bringing about such a clarification of our opinion and judgment, our consideration is limited to evidence which was before the Administrator in the protest proceeding in the original case. To require complainant, under these circumstances, to file another protest before the Administrator would obviously be a useless procedure.

The general principle upon which our judgment in the original suit was based was that Maximum Price Regulation No. 451, while classifying book papers according to quality, failed to give the same recognition to all papers of equal quality. The only question regarding prices presented for our attention at that time involved the contention that the Regulation was discriminatory because it allowed to competitors of complainant greater increases in price above 1939 levels than were allowed to complainant. We held this contention to be without merit. In our written opinion disposing of the original complaint we found it unnecessary to discuss the question now raised by complainant with regard to the relationship of prices set by the Regulation to the classifications by quality.

The maximum prices now specified in the Revised Regulation are the same as those first established by Maximum Price Regulation No. 451. Before the establishment of Maximum Price Regulation No. 451, the prices of book papers in the industry varied within each quality group and consequently the significance of prices charged by a manufacturer was minimized as an indication of quality. However, the establishment of the Regulation by the Administrator in effect made price a criterion of quality. Since a uniform price was set for all brands of one quality, it was a natural inference that a brand not selling for that price was of a different quality. In some instances papers which in a normal market were most closely related in price to products of a certain quality were found by the Administrator to be more similar in quality to other products and were therefore priced with the latter. The prices fixed by the Regulation thus were an integral part of the quality classification which we found objectionable. Since they are being continued, there lurks in the present Regulation a trace of classification according to quality with possible prejudice to complainant, the prices of whose papers are not the same as the prices for papers of equal quality.

There is nothing in the record before us to show the extent to which the present Regulation reflects unfavorably upon the quality of complainant's papers and it is even possible that no competitive disadvantage results. However, when reliance is placed by the Administrator, in fixing prices for competitors, upon the element of quality and the same recognition is not accorded to products of equal quality, it is reasonable to presume that some significance will be attached to this discrimination by those in the trade. This is particularly true in the present case, where, as pointed out in our first opinion, there is sensitiveness in the trade over the question of quality.

We adhere to the view expressed in our earlier opinion that complainant has not shown itself to be entitled to higher prices for its products. Further we find no impropriety in the Administrator's purpose to establish modal prices in a complex industry. However, we find the price structure of Maximum Price Regulation No. 451 and Revised Maximum Price Regulation No. 451 is defective under our previous judgment in that the prices were fixed on the basis of quality and yet all products of equal quality were not given

the same price. If quality is to bear upon the prices of the products of complainant's competitors, it should also bear upon the prices of complainant's papers. Conversely, if quality is eliminated as a pricing factor for complainant's products, it should also be eliminated as a factor in the pricing of competing products.[3]

Judgment will be entered setting aside Revised Maximum Price Regulation No. 451 insofar as it continues in effect previously established maximum prices originally based upon recognition of quality of some book papers and at the same time continues in effect previously established maximum prices for competing papers originally established without any recognition of the quality of such papers.

---

[3] Compare Hawaii Brewing Corp. v. Bowles, Em.App.1945, 148 F.2d 846; Flett v. Bowles, Em.App.1944, 142 F.2d 559.